EDWARD J. EPSEN (FORMERLY EDWARD J. EPSTEN), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97914.   Promulgated April 29, 1941.

*Harry E. Judd, Esq.,* and *William A. Schall, Esq.,* for the petitioner.

*Benjamin L. Bird, Esq.,* for the respondent.

326

[black redaction block]

## OPINION.

TURNER: The pleadings present three questions: (1) Whether the price petitioner was to pay for the shares of stock was fixed by the corporation at $50 per share so as to effect the payment of further compensation for services which petitioner had rendered to it; (2) whether the stock was acquired by the petitioner during the taxable year ended March 31, 1935; and (3) whether the fair market value of the stock at the time acquired by petitioner was $266.93. With respect to the fair market value of the stock at the date of its acquisition by petitioner, the petitioner has offered no proof, and we accordingly sustain the respondent's determination of $266.93 per share.

With respect to the compensation issue, it is the contention of the petitioner that the stock was obtained under an option granted to him by his father on January 10, 1928, and in no respect constituted compensation for services rendered by him to the corporation. In that connection it is noted that the option referred to provided that the petitioner should have the privilege of buying at $100 per share a sufficient number of the shares owned by his father so as to make him the owner of one-half of the shares of stock outstanding after the shares then owned by certain minority interests had been retired. During the interval from January 10, 1928, to April 3, 1934, the corporation had been very successful and the efforts of petitioner had been largely responsible for that success. No explanation is offered, nor is any reason given, why petitioner's father did not carry out his agreement to sell the petitioner a sufficient number of his shares of stock to constitute petitioner the owner of one-half of the shares outstanding other than what may be inferred and concluded from the resolution of April 3, 1934. The argument seems to be that the transaction as carried out was in fact no different from that indicated by the option, since the total amount petitioner would have had to pay his father at $100 per share for 115½ shares, being the number of shares that would have been required under the option, is exactly the same, namely, $11,500, as the amount of cash paid by petitioner

to the corporation for 231 shares at $50 per share. Such an argument, if it may be termed an argument, does not negative, however, the fact that the stock here in question was acquired from the corporation and not petitioner's father, nor the reasons as expressed in the corporate resolution of April 3, 1934, for selling the 231 shares of stock to petitioner at $50 per share. In that resolution it is stated that "in recognition of the valuable and faithful services of Edw. J. Epsten who has in fact had full responsibility for the practical and successful management of the business for many years and in appreciation of his loyal and untiring efforts in building the business" to its then existing status it is "resolved that the president of the Company authorize the issuance of 231 shares of the common stock of the corporation from the common stock of the treasury, for a consideration of $50.00 cash per share and valuable service." Regardless of the fact that the petitioner may have had some claim on his father for 115½ shares at $100 per share, 115½ being a sufficient number of his father's shares to constitute petitioner the owner of one-half of the shares outstanding, and regardless of the fact that that promise may have had some bearing upon the action of the corporation, the fact remains that the petitioner acquired 231 shares at $50 cash per share not from his father, but from the treasury stock of the corporation, and a part of the consideration for such stock was the valuable service which had been rendered during the interval by petitioner to the corporation.

The petitioner makes an argument, however, which in effect is that the resolution does not mean what it says and some of the answers elicited by petitioner's counsel from the petitioner and his father seemed directed to the thought that no directors' meeting was held on April 3, 1934, and that the resolution was written up not to indicate action taken but for the benefit of petitioner's two younger brothers in the event they might later complain that the father had discriminated against them in favor of petitioner. The resolution as set forth in our findings of fact regularly appeared as a part of the corporate minutes at the time respondent's agent made his examination herein in 1936, which minutes were signed by Ed. C. Epsten, as president, and Edward J. Epsten, as secretary and treasurer. Later at a formal conference in the office of the revenue agent in charge in Omaha petitioner and his counsel presented what purported to be the minutes of the meeting of April 3, 1934, claiming that the resolution as set forth therein was the correct resolution. The resolution so submitted read as follows:

#### RESOLUTION

WHEREAS, in consideration of an agreement or promise of Ed. C. Epsten several years ago to sell Edw. J. Epsten a sufficient portion of his holdings at

not over par value so that the stock holdings of Ed. C. Epsten and Edw. J. Epsten would be identical, and to simplify the mechanics of fulfilling this promise:

Be It Resolved that the President of the Company authorize the issuance of two hundred and thirty-one (231) shares of the common stock of the Corporation from the common stock in the treasury, for a consideration of fifty dollars ($50.00) cash per share.

The explanation offered with respect to the absence from the minute book of the minutes as they originally stood was "We haven't them any more; they have been destroyed." At the hearing in this proceeding the minute book was produced and the resolution appearing therein as having been adopted at the directors' meeting of April 3, 1934, was in the same form and words as it appeared originally, one difference being however that the minutes produced at the hearing were not signed. In the light of the above, it is our conclusion that the resolution as it appears in our findings of fact was regularly adopted by the board of directors on April 3, 1934, and properly reflects the action of the board of directors taken on that day. That resolution, as we have previously indicated, shows that the consideration for the 231 shares of common stock of the corporation sold to petitioner was $50 per share and the valuable services which had been rendered to the corporation by the petitioner. Having acquired the said shares for the consideration stated, compensation was realized by petitioner in an amount equal to the difference between the price paid by him for the stock and the fair market value of said stock. *Albert Russel Erskine*, 26 B. T. A. 147; *W. M. Ritter Lumber Co.*, 30 B. T. A. 231; and *Electric Storage Battery Co.*, 39 B. T. A. 121. Cf. *Delbert B. Geeseman*, 38 B. T. A. 258; *Gordon M. Evans*, 38 B. T. A. 1406; and *Herbert H. Springford*, 41 B. T. A. 1001.

The remaining contention of the petitioner is that in any event the stock was not acquired until after the close of the taxable year, and even though he did receive compensation for services rendered as a result of the transaction, such compensation was not received during the taxable year. He relies on entries made in the books of account and in the stock book to show that the stock was not acquired by him until June 3, 1935. Answering this contention of the petitioner, the respondent relies, among other things, on the statements appearing in an affidavit signed by petitioner and in an affidavit signed by his father submitted to the respondent in protest of any determination that the petitioner realized any sum as compensation upon the purchase of said shares. In both of the affidavits it is stated that the stock was acquired by the petitioner in 1934. The explanation offered by the petitioner and his father when they appeared as witnesses at the hearing was that these affidavits were prepared by others and that they were not then aware of the entries appearing on the corporate books under date of June 3, 1935. Such action on

the part of these two individuals to say the least indicates a careless disregard of the importance of an oath. Furthermore in our opinion the statements appearing in the affidavits rather than the statements made from the witness stand present the true picture. In the resolution adopted on May 24, 1935, it was provided that there should be issued as a stock dividend to each holder of common stock of the corporation one share of common stock for each share "now held by the stockholders as is shown by the books of the corporation." Under authority of that resolution 250 shares of stock were issued to petitioner as a stock dividend. If petitioner had not acquired the original 231 shares here in question until June 3, 1935, as he now contends, he would not, according to the resolution of May 24, have been entitled to 231 shares of the stock dividend distributed to and received by him. The charge against petitioner's personal account as of June 3, 1935, to cover payment of the $50 per share for the stock was apparently only a belated entry to cover a transaction regarded by all of the interested parties as having been previously concluded. The respondent's determination that the stock was acquired by the petitioner in the taxable year is supported by the acts of the parties themselves, their attitude with respect to the ownership of the stock, and the statements contained in the affidavits previously submitted to the respondent by the petitioner and his father. We accordingly conclude that the stock was acquired in the taxable year and sustain the respondent's determination.

*Decision will be entered for the respondent.*